## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **KAREN SPENCER**<br>**12615 Indian Lane**<br>**Waldorf, MD 20601** | ) ) ) ) ) ) | |
| *Plaintiff,* | ) ) | **Case No. 23-1998** |
| **v.** | ) ) | **Jury Trial Demand** |
| **DENIS MCDONOUGH, SECRETARY**<br>**UNITED STATES DEPARTMENT**<br>**OF VETERANS AFFAIRS**<br>**810 Vermont Avenue N.W.**<br>**Washington, D.C.  20420** | ) ) ) ) ) ) ) | |
| *Defendant.* | ) ) | |

## COMPLAINT

Plaintiff Karen Spencer (hereinafter "Plaintiff Spencer," "Dr. Spencer," or "Plaintiff") by and through her attorneys, hereby files this Complaint against Denis McDonough, in his official capacity as Secretary of the United States Department of Veterans Affairs (hereinafter "Defendant", "VA", or the "Agency").  Plaintiff seeks relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and seeks damages, including but not limited to declaratory, injunctive, and other equitable relief; compensatory damages; and litigation expenses and reasonable attorneys' fees based on Defendant's discriminatory, harassing, retaliatory, and otherwise unlawful actions against Plaintiff Spencer.

1

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e.

2.      Plaintiff has exhausted all administrative remedies prior to filing suit.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant may be found in this judicial district.

## PARTIES

4.      Plaintiff Karen Spencer, DNP, ACNP-BC, is an African American female who was employed as a Pain Nurse Practitioner at the VA Medical Center, Department of Health in Washington, D.C.  At all relevant times, Plaintiff Spencer was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

5.      Defendant Denis McDonough is the Secretary and head of the United States Department of Veterans Affairs. The Department of Veterans Affairs is an agency within the United States federal government and was an employer as defined by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

## FACTS

6.      Dr. Spencer is nurse practitioner who worked for the DC VA Medical Center in Washington, D.C.  from August 2006 to July 6, 2019.  She was the nurse practitioner for the pain clinic in the Department of Neurology initially, and from July 2012 to July 6, 2019, Dr. Spencer was the pain nurse practitioner for the Department of Mental Health.

7.      Dr. Spencer was trained to perform trigger point injections, which is an injection done with an anesthetic or dry needle, palpating scar tissue in hopes of relieving pain. Dr.

Friedhelm Sandbrink, the Chief of the Pain Clinic, trained Dr. Spencer in trigger point injections in 2007.

8.    At the VA Medical Center in Washington, D.C., a scope of practice (SOP) is the boundaries under which a medical clinician practices and it is signed by the facility director and renewed when the next SOP was completed/signed. The purpose of an SOP is to ensure safety for the provider and patient. Dr. Spencer renewed her SOP with Dr. Sandbrink after 2007 and it confirmed that she had been doing trigger point injections. When Dr. Spencer transferred from the Pain Clinic to the Mental Health Department, she got a new SOP under her new supervisor, Dr. Maria Llorente and Dr. Spencer's SOP remained unchanged after the transition.

9.    When Dr. Spencer arrived in the Pain Clinic, she saw new patients in the mornings and in the afternoons she did follow-up clinic and she did trigger point injections during follow up clinic, which included refills of medications or revaluations for patients enrolled in the health clinic.

10.    After Dr. Llorente was no longer Dr. Spencer's supervisor,  Dr. Dominique Neptune became Dr. Spencer' supervisor in August 2017.

11.    There was an incident in 2018 where she left a capped syringe in her office. The incident occurred because there was a veteran who had been rescheduled for appointments twice, so when he arrived, under the I CARE Values of the VA and because he was in pain, Dr. Spencer did a single time trigger-point injection in her office, and capped the syringe but accidently left the capped syringe in her office.

12.    The syringe incident occurred in April or May of 2018, and the syringe was discovered during a routine safety inspection, which triggered an investigation and the investigation concluded in June of 2018. Dr. Neptune placed Dr. Spencer on a FPPE-Focused

3

Professional Performance Evaluation, which is similar to a performance improvement plan. Dr. Spencer was not allowed to practice during this period and this continued until August 2018 under Dr. Neptune's orders. Dr. Spencer demonstrated improvement but was not removed from the FPPE

13.    In the fall of 2018, Michael Heimall, a white male, was the Facility Director and Dr. Charles Faselis, a white male, was the Chief of Staff during 2018.

14.    Dr. Spencer was told she was still on an FPPE after November 2018. However, once she read the VA Medical Center Bylaws for staff, she realized she was not really on an FPPE. Dr. Spencer had a conversation with Dr. Faselis in December 2018 regarding the FPPE during his office hours. She questioned when she would be removed from the FPPE and he stated that Dr. Spencer would be on the FPPE for a long time because she is "a problem child" and nobody wanted her there. Dr. Spencer interpreted that meeting with Dr. Faselis and his comments as a threat to her employment.

15.    During this meeting, Dr. Spencer told Dr. Faselis that the Agency was discriminating against her because of her race, and she later filed a complaint with the Agency's EEO office in January 2019. Dr. Faselis believed that Dr. Spencer was accusing him of being a racist. He thereafter took steps to suspend her practice privileges and initiate a second investigation of her of the initial incident with the syringe.

16.    Dr. Spencer learned her privileges were being suspended in January 2019, after she was called into Dr. Faselis' office. Dr. Spencer was given a packet where she learned of the second investigation and was told she had a number of days to respond. Chief Nurse Denise Boehm, Dr. Cossgrove, a mental health physician, and Associate Chief Mental Health Nursing Patricia Crawford, were also present at the meeting. Dr. Spencer later found out Ms. Boehm had

been involved in conducting the initial investigation of the capped syringe. Dr. Spencer was told she was being suspended because she was practicing outside of her SOP, as trigger point injections were not in her SOP. Dr. Spencer responded that Dr. Sandbrink trained her to do trigger point injections and included them in her SOP.

17.    Dr. Spencer submitted a response to her suspension in the timeframe given. During this period, her job responsibilities were impacted as she was not allowed to see patients for 30 days while Mr. Heimall reviewed the packet. When Dr. Spencer saw Mr. Heimall after 30 days (around late February 2019), he printed another suspension letter, patted Dr. Spencer on the shoulder, and told her "we have to follow the bylaws. You know what those are, don't you Dr. Spencer?"

18.    Dr. Spencer had her privileges suspended three times, in violation of the VA Medical Center's Bylaws, and the third suspension occurred in May-June 2019 through a reprint of the first suspension letter.  Dr. Spencer was terminated in July 2019 based on Mr. Heimall's conclusion that  Dr. Spencer was practicing outside of her SOP. Dr. Spencer believes her race was a factor in termination as she was publicly humiliated when she was removed from her office and moved to an information booth after May 2018 during the investigations.

19.    While working in the information booth, Dr. Spencer met Kevin Green, a veteran, who told her he was in for treatment to his right leg and he was diabetic. Eventually, Mr. Green's left leg was amputated. He told Dr. Spencer that no one would tell him what was going on, and asked her to sit with him and go through his chart. Dr. Spencer learned the resident caring for Mr. Green gave him Oxycodone (when his chart says he has an allergy to it), he did not receive a physical exam, and the nurse's notes in his file said his left leg did not have a pulse. Dr. Spencer said if the resident had read his chart thoroughly, she would have noticed his leg was pulseless,

5

instead it took the resident four days to notify vascular that there was problem with Mr. Green's left leg. This female resident was a white female. There was a disparity in treatment between her and the white resident since Dr. Spencer's punishment for a capped syringe was much more severe (investigated twice, suspended three times, and fired).  As a nurse practitioner, Dr. Spencer and the resident functioned basically the same.

20.    One of Dr. Spencer's colleagues, the Assistant Nurse Manager of the Inpatient Psychiatric Unit who worked closely with Dr. Spencer provided a statement under oath that during the period that Dr. Spencer worked at the VA Medical Center she witnessed instances where nurses did not properly dispose of syringes, and the employees were not disciplined because a syringe was not properly disposed of and those employees were identified and counseled verbally and this type of infraction would never rise to the Chief of Staff, Dr. Faselis, or result in the termination of an employee.

## COUNT I

**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e *et seq.***
**Discrimination Based on Race and Sex and Retaliation**

21.    Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

22.    At all pertinent times, Defendant was an employer subject to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

23.    At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

24.    Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to

6

discriminate against any individual with respect to her compensation, term, conditions, or privileges of employment, because of such individual's color, religion, sex, age, national origin, or to limit, segregate, or classify employees or applicants for employment opportunities or otherwise adversely affect her status as an employee, because of the individual's race, color, religion, sex, age, or national origin, and prohibits taking action against an employee because the employee engages in protected activity and opposes discrimination.

25.     Defendant, in violation of Title VII of the Civil Rights Act of 1964, subjected Plaintiff to discrimination based on her race and sex when she was subjected to a second investigation of an incident where a capped syringe was left in her office, and she had her privileges suspended on three occasions in 2019 and was terminated in July 2019.  Dr. Spencer's white colleagues and male colleagues were not subjected to the same type of discipline. Specifically, a white female resident, whose negligent actions and deviations from the standard of care resulted in a veteran patient having his leg amputated, was not disciplined. The reasons given for Plaintiff's discipline and termination were false because Dr. Llorente told members of the MEC that Dr. Spencer's SOP was the same one that she used in the Pain Clinic and if there were any issues with the SOP, she would take full responsibility for it.  Dr. Faselis initiated a second investigation because Dr. Spencer had complained about her supervisor, Dr. Neptune, and he perceived that Dr. Spencer was accusing him of being a racist.  The Agency failed to follow its bylaws and policies in suspending Dr. Spencer's privileges and terminating her because there was no peer review, she was denied the right to appeal to the VISN and regional directors, she was suspended three times without an explanation, and the Agency's explanation for why it suspended/terminated Dr. Spencer changed over time.

26.     As a direct and proximate result of the Defendant's actions, Plaintiff has suffered emotional distress, pain and suffering, humiliation, and embarrassment.

27.     Defendant had no legitimate business reason for any such acts.

28.     Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

## COUNT II

**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e *et seq.***
**Retaliation**

29.     Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

30.     At all pertinent times, Defendant was an employer subject to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

31.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

32.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to take action against an employee because the employee engages in protected activity and opposes discrimination.

33.     Defendant, in violation of Title VII of the Civil Rights Act of 1964, subjected Plaintiff to unlawful retaliation after she reported to Dr. Faselis that she was being subjected to discrimination in December 2018, when she was subjected to second investigation of an incident where a capped syringe was left in her office, and she had her privileges suspended on three occasions in 2019 and was terminated in July 2019.  Dr. Spencer's colleagues who had not engaged in protected activity were not subjected to the same type of discipline. Specifically,

8

several nurses did not properly dispose of syringes and were verbally counseled and not subjected to investigations nor had their privileges suspended nor disciplined or terminated. A white female resident, whose negligent actions and deviations from the standard of care resulted in a veteran patient having his leg amputated, was not disciplined. The reasons given for Plaintiff's discipline and termination were false because Dr. Llorente told members of the MEC that Dr. Spencer's SOP was the same one that she used in the Pain Clinic and if there were any issues with the SOP, she would take full responsibility for it. Dr. Faselis initiated a second investigation because Dr. Spencer had complained about her supervisor, Dr. Neptune, and he perceived that Dr. Spencer was accusing him of being a racist. The Agency failed to follow its bylaws and policies in suspending Dr. Spencer's privileges and termination because there was no peer review, she was denied the right to appeal to the VISN and regional directors, she was suspended three times without an explanation, and the Agency's explanation for why it suspended/terminated Dr. Spencer changed over time.

34.     As a direct and proximate result of the Defendant's actions, Plaintiff has suffered emotional distress, pain and suffering, humiliation, and embarrassment.

35.     Defendant had no legitimate business reason for any such acts.

36.     Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Spencer prays as follows:

A.     That the Court issue an order declaring Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and declaring Plaintiff eligible to receive equitable and other relief;

9

B.      That the Court enter judgment against Defendant;

C.      That the Court issue a permanent injunction prohibiting Defendant from engaging in any further acts of discrimination, harassment, and retaliation;

D.      That the Court enter judgment in favor of Plaintiff against Defendant for all equitable monetary damages available under the law;

E.      That the Court order Defendant to refrain from any action against Plaintiff, or any other person, for participating in or supporting this case in any manner;

F.      That the Court order Defendant, individually and collectively, to pay compensatory damages;

G.      That the Court order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs; and

H.      That the Court order Defendant to pay pre-judgment and post-judgment interest as provided by law.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims against Defendant.

Date: July 11, 2023                                    Respectfully submitted,

-                                                      _____/s/ David A. Branch
                                                       David A. Branch
                                                       D.C. Bar No. 438764
                                                       Law Office of David A. Branch
                                                       & Associates, PLLC
                                                       1828 L Street N.W., Suite 820
                                                       Washington, D.C. 20036
                                                       Phone: (202) 785-2805
                                                       Fax: (202) 785-0289
                                                       Email: davidbranch@dbranchlaw.com